UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ARTHUR FALLS and SANDRA FALLS,<br>    *Plaintiffs*,<br>    *v.*<br>NOVARTIS PHARMACEUTICALS CORP.,<br>    *Defendant*. | Civil No. 3:13cv270 (JBA)<br><br>August 1, 2014 |

**RULING ON DEFENDANT'S MOTION TO DISMISS
AND PLAINTIFFS' MOTION FOR SUBSTITUTION**

Defendant Novartis Pharmaceuticals Corporation ("Novartis") has moved [Doc. #38] to dismiss the complaint pursuant to Rule 25(a) of the Federal Rules of Civil Procedure on the basis that no timely motion for substitution of parties was filed within 90 days after Defendant filed a Suggestion of Death, providing notice of the death of Plaintiff Arthur E. Falls, who passed away on October 4, 2013.  Mr. Falls's widow, Plaintiff Sandra Falls, who has asserted a claim in this action for loss of consortium, has not directly opposed the Motion to Dismiss, but has belatedly moved [Doc. # 41] for the estate of Mr. Falls to be substituted as a party, acknowledging that the motion is untimely but contending that an extension of time should be granted *nunc pro trunc* on the basis that the failure to act was "excusable neglect."  Because Plaintiffs' counsel has failed to demonstrate that his neglect was excusable, the Motion for Substitution is denied and Defendant's Motion to Dismiss is granted.

**I.      Background**

In October 2012, Plaintiff Arthur Falls filed this pharmaceutical products liability lawsuit against Novartis alleging that his exposure to the intravenous bisphosphonate drug Zometa caused him to develop osteonecrosis of the jaw.  His wife, Plaintiff Sandra

Falls, has asserted a derivative claim for loss of consortium. (Compl. [Doc. # 1] ¶¶ 51–53.) Mr. Falls passed away on October 4, 2013 and after Plaintiffs' counsel did not file a suggestion of death, Novartis did so on November 4, 2013. (*See* Suggestion of Death [Doc. # 31].) Under Rule 25(a), Mrs. Falls was required to file a motion for substitution of parties within 90 days of the Suggestion of Death being filed, but did not do so. After this deadline passed, on February 24, 2014, Novartis moved [Doc. # 32] for a pre-filing conference in order to file a motion to dismiss pursuant to Rule 25(a) for failure to move for substitution.[1] During the telephonic conference on March 28, 2014, Plaintiffs' counsel told the Court that he would file a motion for substitution within seven days, but he did not do so within this timeframe. When no motion for substitution was filed, Defendant filed its Motion to Dismiss on April 10, 2014. Plaintiffs did not directly oppose this motion but instead, on April 29, 2014, filed their untimely Motion for Substitution.[2]

II.   **Discussion**

Rule 25(a) provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

---

[1] Additionally, on February 25, 2014 and March 3, 2014, the Court emailed Plaintiffs' counsel requesting an update on the status of the litigation in light of the Suggestion of Death, but no response was received. (*See* Ex. 1 to Def.'s Mem. Supp. [Doc. # 39].)

[2] At the time the Motion for Substitution was filed, Mrs. Falls had been appointed temporary administrator of Mr. Falls's estate. However, by a Supplemental Reply [Doc. # 48], dated June 9, 2014, Plaintiffs' counsel represents that Mrs. Falls was appointed executor effective May 20, 2014. (*See* Fiduciary's Probate Certificate [Doc. # 48-1].)

Although Rule 25(a) states that an action "must" be dismissed if a timely motion for substitution is not filed, "[i]t is intended that the court shall have discretion to enlarge" the 90 day period under Rule 25(a) by operation of Rule 6," *Staggers v. Otto Gerdau Co.*, 359 F.2d 292, 296 (2d Cir. 1966) (internal quotation marks omitted), which provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect," Fed. R. Civ. P. 6(b)(1)(B).

Plaintiffs' counsel does not dispute the failure to comply with the 90-day requirement, but contends that it was done "inadvertently," because he has "been working arduously on behalf of . . . . approximately 180 plaintiffs for the Aredia and Zometa litigation" and that there is good cause to permit the late filing, because "there is no danger of prejudice to the Defendant."[3]  (Pls.' Mot. [Doc. # 41] for Substitution at 5.) Defendant contends that attorney inadvertence does not establish excusable neglect.

In *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 388 (1993), the Supreme Court interpreted the "excusable neglect" standard and rejected the view that "any showing of fault on the part of the late filer would defeat a claim of 'excusable neglect.'"  Instead, the Supreme Court held that under the excusable neglect

---

[3] Citing the Connecticut survival statute which allows six months for substitution from the date of death itself (not a suggestion a death), Conn Gen. Stat. § 52-599(a), Plaintiffs' counsel contends that the motion was filed only one month late. However, although state substantive law determines whether a claim survives death, "Rule 25(a) is a procedural rule setting forth the proper method for the substitution of parties, and federal courts must apply federal rules, rather than state law, in determining the proper procedure for substitution following a party's death." *In re Baycol Products Litig.*, 616 F.3d 778, 785 (8th Cir. 2010).

standard, "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* The Supreme Court noted that "[t]he ordinary meaning of 'neglect' is 'to give little attention or respect' to a matter, or, closer to the point for our purposes, 'to leave undone or unattended to *especially through carelessness*'" and thus concluded that "[t]he word therefore encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* (quoting *Webster's Ninth New Collegiate* Dictionary (1983) (alterations omitted) (emphasis in original)).[4]

While counsel's inadvertence may qualify as "neglect," "[t]his leaves, of course, the Rule's requirement that the party's neglect . . . be 'excusable,'" *Pioneer*, 507 U.S. at 395, which Plaintiffs' counsel scarcely addresses. The determination of "whether a party's neglect of a deadline is excusable . . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "[1] the danger of prejudice to the [other party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* at 395.

---

[4] Although *Pioneer* arose in the context of Bankruptcy Rule 9006(b)(1), which "was patterned after Rule 6(b)," *Pioneer*, 507 U.S. at 392 n. 9, the Second Circuit has also applied the *Pioneer* standard to Rule 6(b), *see United States v. Hooper*, 9 F.3d 257, 259 (2d Cir. 1993) ("Although the *Pioneer* Court's examination of 'excusable neglect' arose in the context of a dispute over the proper interpretation of Bankruptcy Rule 9006(b)(1) . . ., the Court's opinion is based on the term 'excusable neglect' and draws upon the use of that term in other federal rules.").

The Second Circuit has noted that "[i]n the typical case, the first two *Pioneer* factors will favor the moving party" and "rarely in the decided cases is the absence of good faith at issue." *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003). "But despite the flexibility of 'excusable neglect' and the existence of the four-factor test in which three of the factors usually weigh in favor of the party seeking the extension, we . . . have focused on the third factor" and "noted that the equities will rarely if ever favor a party who 'fail[s] to follow the clear dictates of a court rule' and held that where 'the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test.'" *Id.* at 366–67 (quoting *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250–51 (2d Cir. 1997)).

"[W]hether neglect is excusable in a particular case rests with the sound discretion of the district court," *Gladstone Ford v. New York City Transit Auth.*, 43 F. App'x 445, 449 (2d Cir. 2002) (quoting *Davidson v. Keenan,* 740 F.2d 129, 132 (2d Cir. 1984)) (alterations in original)), however, the Second Circuit has "taken a hard line," noting that although "substantial rights may be, and often are, forfeited if they are not asserted within time limits established by law . . . . the legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced—where every missed deadline was the occasion for the embarkation on extensive trial and appellate litigation to determine the equities of enforcing the bar," *Silivanch*, 333 F.3d at 367–68.

While dismissal of this action would have the unfortunate effect of penalizing Mrs. Falls for her attorney's neglect, in *Pioneer* the Supreme Court expressly rejected the suggestion that "it would be inappropriate to penalize respondents for the omissions of their attorney," noting that it has held in a number of contexts that clients must be "held

5

accountable for the acts and omissions of their chosen counsel." 507 U.S. at 397; *see also Unicorn Tales, Inc. v. Banerjee*, 138 F.3d 467, 470–71 (2d Cir. 1998) ("The appellants argue unpersuasively that they should not be penalized with dismissal under Rule 25(a)(1) for the actions of their attorneys.").

Here, the *Pioneer* factors weigh against finding excusable neglect. On the first factor, Defendant claims prejudice because it had to "incur the costs of conducting discovery (five depositions have been conducted in this case since Mr. Fall's death) and participating in other pretrial procedures" and the costs of filing this motion. (Def.'s Opp'n to Mot. to Substitute [Doc. # 45] at 7.) This argument is flawed, however, because incurring the costs of defending this action is only potentially prejudicial from the point when Plaintiffs' motion for substitution should have been filed and Defendant gives no indication of the magnitude of defense costs that were incurred after that point. *Cf. Wallace ex rel. Wallace v. Novartis Pharm. Corp.*, 984 F. Supp. 2d 377, 387 (M.D. Pa. 2013) ("Novartis has been prejudiced by being exposed to prolonged and unnecessary litigation" where "substantial" resources were devoted to the case after the point in which the suggestion of death should have been filed.). Moreover, success on this motion to dismiss benefits Defendant as it avoids incurring any further costs. In any event, even if prejudice to the opposing party is "negligible," the Second Circuit has directed courts to focus on the third factor, the reason for the delay. *See Silivanch*, 333 F.3d at 366.

The second factor clearly cuts against Plaintiffs, because the motion for substitution was ultimately filed nearly three months late. This delay is exacerbated by the fact that Plaintiffs' motion was filed: (a) more than a month after the pre-filing conference although Plaintiffs' counsel had represented that he would make such a

6

motion within the week, (b) over two months after Defendant's Motion for Pre-Filing Conference describing the basis for its dismissal motion, and (c) the Court's emails to Plaintiffs' counsel went unanswered.[5]

Focusing on the third factor, counsel for Plaintiffs has offered as an excuse only his own busy schedule and inadvertence.  However, "absent extraordinary circumstances, attorney inadvertence is not excusable neglect," *In re Johns-Manville Corp.*, 476 F.3d 118, 124 (2d Cir. 2007), and "the ability of Plaintiff's counsel to manage his caseload is not a sufficient reason to disregard the Federal Rules of Civil Procedure," *McGuinnes v. Novartis Pharm. Corp.*, 289 F.R.D. 360, 363 (M.D. Fla. 2013) (dismissing case under Rule 25(a) where motion for substitution was untimely); *see also Pioneer*, 507 U.S. at 398 ("In assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."); *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1048 (8th Cir. 2010) ("Hawks's

---

[5] Defendant notes two others cases in which actions instituted by Plaintiffs' counsel has been dismissed by courts *sua sponte* pursuant to Rule 25(a) for failure to file a timely motion for substitution.  *See Gove v. Novartis Pharm. Corp.*, No. 0:13-cv-01410 (ADM) (JJG) [Doc. # 30] (D. Minn. Oct. 8, 2013); *Lawson v. Novartis Pharm. Corp.*, No. 3:12cv74 (MCR) (EMT), 2012 WL 8499733, at *1 (N.D. Fla. Oct. 5, 2012).  At oral argument, Plaintiffs' counsel represented to the Court that in those actions, he made a conscious decision in consultation with his clients to allow the Rule 25(a) deadlines to lapse because they were no longer interested in pursuing the actions.  The Court notes, however, that a third case involving Plaintiffs' counsel was dismissed pursuant to Rule 25(a) over the plaintiff's objection and after the plaintiff filed an untimely motion for substitution where the court noted that "the arguments of Plaintiff's counsel . . . . that he did not research and realize the motion for substitution had not been filed until he received Defendant's present motion to dismiss" "lack a reasonable basis for finding excusable neglect" and the court "questions whether it is made in good faith," because "the evidence shows, Plaintiff's counsel is well aware of Rule 25 and its implications." *McGuinnes v. Novartis Pharm. Corp.*, 289 F.R.D. 360, 363 (M.D. Fla. 2013).

assertion in his motion that his counsel was occupied with other hearings does not constitute excusable neglect." (collecting cases)).

In briefing and at oral argument, Plaintiffs' counsel has offered no valid justification for moving for substitution three months late and district courts within this Circuit have regularly held that attorney inadvertence on its own is not excusable neglect for an untimely motion for substitution. *See, e.g., Steward v. City of New York*, No. 04cv1508 (CBA) (RML), 2007 WL 2693667, at *6 (E.D.N.Y. Sept. 10, 2007) (dismissing action under Rule 25(a), noting that "[a]lthough this result may be perceived as penalizing plaintiff's estate for his counsel's mistake, it is axiomatic that 'clients must be held accountable for the acts and omissions of their attorneys.'" (quoting *Pioneer*, 507 U.S. at 396)); *Zeidman v. Gen. Acc. Ins. Co.*, 122 F.R.D. 160, 162 (S.D.N.Y. 1988) ("In the present case, plaintiff's counsel has failed to make an adequate showing of either good faith or excusable neglect with respect to the failure to move in a timely fashion for substitution of a proper party."); *Billino v. Citibank, N.A.*, No. 94-CV-3231 (JG), 1996 WL 1088925 (E.D.N.Y. Sept. 10, 1996).

As to the fourth factor, as discussed above, Plaintiffs' counsel has not offered a good-faith justification for his prolonged delay and failed to act even after receiving notice of the deficiency. Further, to the extent that counsel contends that his neglect was occasioned by an unmanageable case load, this argument undermines a finding that this neglect was excusable and in good faith. *See. e.g., Wallace ex rel. Wallace*, 984 F. Supp. 2d at 388 ("[T]he Court finds that Attorney Osborn was aware of what his obligations were, but failed to meet them. . . . Attorney Osborn knew what his caseload was and should have known what resources diligent pursuit of these cases would require of him. His

8

decision to take on a high-volume and apparently unmanageable caseload must have been known to him, and to the extent it was knowing, it was willful.").

Where courts have found attorney neglect to be excusable, there are generally at least reasonable good-faith errors by counsel. *See, e.g., George v. United States*, 208 F.R.D. 29, 33 (D. Conn. 2001) ("The Court finds a showing of good faith on plaintiff's part in attempting to comply with the 90 day period . . . . The delay was not due to inaction on the part of plaintiff's counsel, but instead, on the loss or misplacement of documents necessary to complete the appointment of [an] executor."); *Naataanbuu v. Abernathy*, No. 90cv0770 (CSH), 1991 WL 64135, at *4 (S.D.N.Y. Apr. 12, 1991) ("[P]laintiff's mistake was an honest and reasonable error by her counsel that was, in part, attributable to counsel's misinterpretation of certain actions—undoubtedly undertaken in good faith—by defendants."). Given the absence of any valid justification for counsel's failure to file a timely motion for substitution, Defendant's Motion to Dismiss pursuant to Rule 25(a) is granted.

Since Mrs. Falls's loss of consortium claim is derivative of Mr. Falls's claims, it must be dismissed as well. *See Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 563–64 (1989) ("[A] cause of action for the loss of consortium is derivative of the injured spouse's cause of action" and is "dependent for its assertion on the legal viability of the cause of action in the injured party."); *see also Stoffan v. S. New England Tel. Co.*, No. 3:11cv1630 (AWT), 2014 WL 982968, at 16 (D. Conn. Mar. 13, 2014) ("Actions for loss of consortium are derivative causes of action dependent on the legal existence of the predicate action." (internal quotation marks omitted)).

### III.     Conclusion

For the reason set forth above, Defendant's Motion [Doc. # 38] to dismiss is GRANTED and Plaintiffs' Motion [Doc. # 41] for Substitution is DENIED.  The Clerk is directed to close this case.

IT IS SO ORDERED.

                                    /s/
                          Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 1st day of July, 2014.